1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW D. MACHLEID, et al.,

        Plaintiffs,

    v.

CITY OF ISSAQUAH, et al.,

        Defendants.

CASE NO. C08-1629RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on six pending motions.  Dkt. ## 40, 49, 50, 51, 58, 90.  Four are summary judgment motions: three from Defendants, one from Plaintiffs.  The other two are Plaintiffs' motions to compel discovery.  For the reasons stated below, the court GRANTS in part and DENIES in part Defendants' summary judgment motions (Dkt. ## 40, 50, 51), DENIES Plaintiffs' summary judgment motion (Dkt. # 58), and DENIES both discovery motions (Dkt. ## 49, 90).  Because this order disposes of all federal claims, the court requires the parties to submit statements no later than July 2, 2010, addressing whether the court should exercise its discretion to remand the remaining state law claims to King County Superior Court.  28 U.S.C. § 1367(c)(3).

ORDER – 1

## II.  BACKGROUND

This action concerns a prolonged dispute over the efforts of Plaintiffs Andrew and Wendy Machleid to build a home on a mountain road in Issaquah.  The court summarizes only the essential facts here.

The Machleids began building their home in 2004.  Portions of their property are allegedly either burdened by a native growth protection easement ("NGPE") or are within the buffer area of such an easement.  Defendant The City of Issaquah (the "City") also has a drainage easement running over a portion of the Machleid property.  A storm drainage pipe running beneath the roadway above the Machleid property discharges water into the easement.

The Machleids claim that the drainage exceeds the easement to the detriment of their property.  They allege that the excess drainage caused erosion and landslides on a steep hillside on their property, and damaged a silt fence, the foundation of their home, and their sewer line.  ¶¶ 3.5, 3.12-3.14.[1]  Mr. Machleid complained about the drainage issues to City officials, including Sheldon Lynne, the deputy director of the City's public works and engineering department, who is the only other Defendant in this action.  According to the Machleids, Mr. Lynne erroneously advised them that the storm drainage was the responsibility of a nearby homeowners' association.  ¶ 3.14.  He also allegedly advised Mr. Machleid to take steps to divert the drainage away from areas of the property where it could do damage.  *Id.*

When the City's response to his complaints about the drainage did not satisfy Mr. Machleid, he arranged in June 2006 to "place fill material in the area where the City's storm drainage had destabilized the land . . . ."  ¶ 3.24.

In August 2006, the City charged Mr. Machleid with two violations of section 18.10.840 of the Issaquah Municipal Code ("IMC").  Those charges ultimately resulted in a criminal complaint alleging two essential violations:  removing trees within the NGPE

---

[1] All citations using bare "¶" symbols are to Plaintiff's amended complaint.  Dkt. # 5.

ORDER – 2

or its buffer zone, and dumping unapproved fill on a slope within the NGPE or its buffer zone. Mr. Machleid, represented at the time by counsel, disputed the charges in Issaquah Municipal Court. On May 21, 2007, Mr. Machleid and the City reached a Stipulated Order of Continuance ("SOC") for the criminal charges. The original SOC continued the criminal proceedings for 18 months so that Mr. Machleid could meet a set of conditions relating to his development of the property. Mr. Machleid agreed that if he did not comply with the SOC, the outcome of the criminal proceeding would be resolved by stipulation to a set of facts attached to the SOC.[2] The parties extended the SOC by agreement at least once.

The City was dissatisfied with Mr. Machleid's performance of the SOC conditions, and moved to revoke the SOC in June 2008. After considering briefing and several hearings the Municipal Court granted the motion, revoked the SOC, and found Mr. Machleid guilty of the two IMC violations in January 2009. In May 2009, the Municipal Court deferred sentencing for 24 months, placing Mr. Machleid on probation, requiring him to complete 25 hours of community service, and setting a review hearing for 90 days later.[3] Mr. Machleid appealed his conviction to King County Superior Court, using Washington's procedure for appealing judgments from courts of limited jurisdiction. So far as the court is aware, no decision has been made in that appeal.

After the City moved to revoke the SOC, but before the Municipal Court made a decision, the Machleids filed the instant lawsuit in King County Superior Court. Although they had counsel when this suit began, they now are representing themselves. Defendants removed the lawsuit to this court, on the basis of the numerous federal claims

---

[2] The SOC provided that "Defendant agrees that in his/her failure to comply with the terms of this agreement, that the factual allegations and issues will be resolved solely by stipulation to facts sufficient as contained in the reports appended hereto as exhibit(s) 17." No party has made any effort to identify "exhibit(s) 17," and the court cannot locate it in the record.

[3] The charges on which Mr. Machleid was convicted each carried a maximum term of imprisonment of 90 days. IMC 18.10.860.

ORDER – 3

asserted in the Machleids' complaint.  They have now filed three summary judgment motions that collectively seek to dispose of all of the Machleids' claims.

### III.  ANALYSIS

The court will examine each of the Machleids' thirteen causes of action.  The court will apply the familiar summary judgment standard where appropriate.  Following that standard, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in answering legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

In reviewing the Machleids' claims, however, the court will often not need to address issues of fact.  Many of the court's conclusions in this order are dictated not by fact, but by law.  Res judicata and related preclusion doctrines dictate that the determinations of the Municipal Court bind this court.  Principles of federalism and comity prevent this court from interfering with state court proceedings or making rulings contrary to those of the state court.  The court will discuss those principles as it addresses the Machleids' claims, beginning with their first claim.

### A.    First Claim – Writ Relief As to State Court Proceedings

The Machleids' first claim for relief is an "Application for Extraordinary Constitutional and Statutory Writ Relief."  ¶¶ 4.1-4.3.  It is not clear if they wish to continue to assert this claim, for which they seek a "stay of current criminal law

ORDER – 4

proceedings," and to "remove all criminal proceedings to King County Superior Court." ¶ 4.3.  Mr. Machleid made this claim while proceedings were still pending in Municipal Court.  Those proceedings have terminated (except for Mr. Machleid's probation), and the King County Superior Court now has jurisdiction over Mr. Machleid's appeal. Assuming that Mr. Machleid wishes this court to stay either the pending appeal or whatever remains pending in Municipal Court, the court must dismiss his claim as a matter of law.  A federal court may not stay a pending state court proceeding except under special circumstances that are not applicable in this case.  *Younger v. Harris*, 401 U.S. 37, 43-45 (1971).

**B.      Second Claim – 42 U.S.C. § 1983 Due Process Violation**

The Machleids' second claim for relief is the first in a series of five claims that assert federal constitutional violations via 42 U.S.C. § 1983, which provides a remedy for persons deprived of federal rights by a person acting under color of state law.  Their second claim asserts various due process violations: "[c]ausing the Plaintiffs to enter into [the SOC], misusing criminal law processes to force Plaintiffs to correct a drainage issue for which they were not liable, failing to [sic] and ignoring the complaints the Plaintiffs had identified and brought to the city's attention while at the same time actively pursuing a complaint against the Plaintiffs brought by the city."  ¶ 5.2.  The claim also asserts that the property-use conditions imposed in the SOC constitute a land development exaction in violation of the Fifth Amendment.

To the extent the Machleids challenge the property-use conditions of the SOC, their challenge is either moot or invalid.  In explaining why, the court begins with a review of the doctrine of res judicata and related principles.  Res judicata, or "claim preclusion," prevents a party who has lost in one court from relitigating the same claims in a different court.  In determining the preclusive effect of a state court judgment, a federal court must look to the preclusion law of that state.  *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007).  In Washington, claim preclusion requires four identities

ORDER – 5

between a claim resolved in the prior judgment and the claim raised in a subsequent action:  "(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made."  *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 897 (9th Cir. 1995) (quoting *Rains v. State*, 674 P.2d 165, 168 (Wash. 1983)).  Claim preclusion applies not only to claims that were raised in the prior proceeding, but to claims that could have been raised as well.  *Codispoti*, 63 F.3d at 897 ("[A] plaintiff is not allowed to recast his claim under a different theory and sue again. . . . All issues which might have been raised and determined are precluded.") (quoting *Shoemaker v. City of Bremerton*, 745 P.2d 858, 860 (Wash. 1987)).  Moreover, claims may be "identical" for claim preclusion purposes even if they are not precisely the same.  A court must consider four criteria:

> (1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Rains*, 674 P.2d at 168 (quoting *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).

Applying these principles to the Municipal Court's judgment is fatal to many of the claims the Machleids raise in this action.[4]  Critically, the Municipal Court ruled that Mr. Machleid had violated the SOC, and on that basis convicted him of two criminal offenses.  In so doing, the Municipal Court necessarily ruled that the SOC was valid.  Mr. Machleid had the opportunity to contest the validity of the SOC on any relevant ground.  The record reflects that he indeed attacked the SOC in the Municipal Court.  Those attacks were not successful.

---

[4] That the Municipal Court is a court of limited jurisdiction does not limit the preclusive effect of its judgment. *Noel v. Hall*, 341 F.3d 1148, 1171 (9th Cir. 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Avery*, 57 P.3d 300, 305 (Wash. Ct. App. 2002)).  There is no indication that there is any relevant defense or claim that Mr. Machleid was prevented from raising because of the Municipal Court's limited jurisdiction.

ORDER – 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Machleids are precluded from making many of the assertions in their complaint regarding the SOC.  There is no question that two of the parties involved in this proceeding (Mr. Machleid and the City) are the same as those in the Municipal Court proceeding.  The addition of Mr. Lynne as a Defendant and Ms. Machleid as a Plaintiff makes no difference, as both parties are respectively the privies of the City and Mr. Machleid.  The only open question is whether the claims the Machleids present here are identical, for claim preclusion purposes, to those raised in the Municipal Court.  A review of their allegations answers that question in the affirmative.  For example, they contend that the SOC contained "hidden terms and conditions" (¶ 5.3), was "vague, indefinite, and unenforceable" (¶ 6.2), "unconstitutionally, erroneously, and unlawfully alter[ed] plat conditions" (¶ 3.31), was "entered into as a result of mistake, fraud or misrepresentation, [or] duress" (¶ 3.34), and was an unconstitutional exaction (¶ 5.3).  Mr. Machleid either made or could have made each of these contentions in attacking the SOC in the Municipal Court.  Although Mr. Machleid as a criminal defendant had no right to raise affirmative "claims," he had a full opportunity to present his defense.  In the Municipal Court, presenting his defense meant attacking the validity of the SOC.  Were the court to permit him to attack the validity of the SOC in this proceeding, it would impair the judgment of the Municipal Court.  The evidence Mr. Machleid presented or could have presented in Municipal Court to attack the SOC is substantially the same as the evidence he relies upon here.  The rights asserted are the same, and the "transactional nucleus of facts" from which those assertions arise are the same as well.

Mr. Machleid's claim that the City violated the due process clause by causing him to enter the SOC is also precluded.  He either raised that claim or could have raised that claim in the course of challenging the City's effort to revoke the SOC for non-compliance.  In convicting Mr. Machleid, the Municipal Court necessarily found valid the provisions of the SOC in which Mr. Machleid waived his speedy trial right, waived his right to a jury trial, and agreed to be tried on the basis of facts to which Mr. Machleid

ORDER – 7

had stipulated.  Claim preclusion prevents him from challenging that determination, barring his contention that the SOC itself was a violation of his due process rights.[5]

Mr. Machleid's claim that the SOC (or perhaps the entire Municipal Court criminal proceeding) was a misuse of the criminal law process is precluded as well.  No Ninth Circuit authority of which the court is aware discusses abuse of process as a constitutional violation.  The Ninth Circuit has, however, recognized that the similar tort of malicious prosecution may be actionable as a violation of the constitutional right to due process in certain circumstances.  *Johnson v. Barker*, 799 F.2d 1396, 1400 (9th Cir. 1986).  Courts that have analyzed such claims require the plaintiff to prove the elements of the state law claim of malicious prosecution[6], and also prove that the malicious prosecution was intended to deprive him of constitutional rights.  *Haupt v. Dillard*, 17 F.3d 285, 290 (9th Cir. 1995); *see also See Hunley v. Breceda*, No. CV 02-9106 GHK(AJW), 2010 U.S. Dist. LEXIS 13627, at *49-59 (C.D. Cal. Jan. 4, 2010) (analyzing malicious prosecution and abuse of prosecution claims brought via § 1983).  To prove abuse of process in Washington, a plaintiff must prove "(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings."  *Mark v. Williams*, 724 P.2d 428, 433 (Wash. Ct. App. 1986) (citing *Sea-Pac Co. v.*

---

[5] Although claim preclusion is fatal to many of the Machleids claims, the court notes that many of them are subject to dismissal on other grounds as well.  In particular, the Machleids' success on many of their § 1983 claims would require them to prove facts that undermine the facts on which Mr. Machleid was convicted.  See *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (holding that where a plaintiff "seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated").

[6] The Machleids do not explicitly raise a malicious prosecution claim.  They could not in any case, because a plaintiff seeking to prove malicious prosecution must prove that the prosecution was either abandoned or ended in a judgment in the plaintiff's favor.  *Clark v. Baines*, 84 P.3d 245, 248 (Wash. 2004) (noting that Washington law claim for malicious prosecution requires proceedings to be abandoned or terminated in plaintiff's favor); *Hanson v. City of Snohomish*, 852 P.2d 295, 299 (Wash. 1993) (noting that a conviction at trial, even if reversed on appeal, bars a malicious prosecution claim).

ORDER – 8

1    *United Food & Commercial Workers Local Union 44*, 699 P.2d 217, 220-21 (Wash.

2    1985)).  Mr. Machleid contends that the City had an ulterior motive for instituting

3    criminal proceedings (or entering the SOC) with him: to force him to make land use

4    changes that were beyond the scope of the law.  Even if the court were to accept that

5    contention, the Municipal Court's judgment precludes him from contending that the City

6    engaged in any an improper act in the course of prosecuting the criminal proceeding.  The

7    Municipal Court necessarily ruled that the SOC was valid and a permissible use of

8    process.  Mr. Machleid points to no other unlawful process in the course of prosecuting

9    him, and thus he fails to prove abuse of process.

10          To the extent Mr. Machleid believes he can construct a constitutional due process

11   claim out of the contention that the City "ignored his complaints," he is mistaken.

12          The Municipal Court judgment also precludes the Machleids from claiming that

13   the property-use conditions in the SOC constituted an unlawful development exaction in

14   violation of the Fifth Amendment's Takings Clause.  Again, Mr. Machleid could have

15   raised this claim in Municipal Court.  Perhaps he did.  The Municipal Court's validation

16   of the SOC prevents this court from finding it invalid.  Moreover, it is not at all clear how

17   the Machleids claim to be harmed by the SOC's property-use conditions, as they were

18   released from those conditions in lieu of Mr. Machleid's criminal conviction.  In that

19   regard, their claims would appear to be moot.

20          Finally, even if the court were to ignore claim preclusion entirely, Mr. Machleid

21   has failed to address how conditions in the SOC to which he agreed can violate his

22   constitutional rights.  To the extent those conditions impinged on his constitutional rights

23   at all, there is no indication that he did not knowingly and voluntarily waive those rights.

24   He cites no authority for the notion that he can sue for violations of constitutional rights

25   that he abandoned.

28   ORDER – 9

1

**C.    Third Claim – 42 U.S.C. § 1983 Equal Protection Violation**

2        The court is puzzled by the Machleids' assertion that they were denied the equal

3   protection of the law.  To prove such a claim, they would have to point to evidence, at a

4   minimum, that other similarly situated persons were treated more favorably by the City.

5   They have not attempted to do so.  Moreover, as there is no indication that the Machleids

6   are a member of a constitutionally protected class, they would have to prove that the City

7   had no rational basis for treating them differently.  *City of Cleburne v. Cleburne Living*

8   *Ctr., Inc.*, 473 U.S. 432, 440 (9th Cir. 1985).  They would fail that test as a matter of law,

9   as a rational basis for the City's actions toward them is readily apparent from the record.

10   **D.    Fourth Claim – 42 U.S.C. § 1983 Procedural Due Process Violation**

11        The Machleids contend that a "biased decision maker" denied them their

12   procedural due process rights.  ¶ VII.  This claim is confounding.  The only

13   decisionmaker that the court is aware of is the Municipal Court judge.  The Machleids

14   have no evidence that the judge was biased against them, and no evidence that they

15   attempted to alleviate that bias by, for example, seeking the judge's recusal.  Their sole

16   attempt to point to evidence of bias is that the judge allegedly stated during one or more

17   hearings that to preserve the SOC, Mr. Machleid should work to "keep the City happy."

18   This statement reflects no apparent bias, it merely reflects that Mr. Machleid agreed to a

19   series of obligations in the SOC, and that it was in his interest to meet those obligations.

20   Even if the Machleids had evidence of bias, a claim that a municipal court judge is biased

21   is not properly brought in federal court.  Absent evidence that Mr. Machleid has no state

22   court remedy for his allegations of bias, principles of comity prevent this federal court

23   from addressing the bias of a state court judge.

24        To the extent that Mr. Machleid believes that other City officials were biased

25   against him, he fails to state a due process claims.  Whatever bias City officials might

26   have had, they were not the ultimate decisionmakers.  Mr. Machleid retained the option

27

28   ORDER – 10

1    to challenge the City's land-use determinations in court, and that is adequate to protect

2    his right to procedural due process.

3         To the extent that Mr. Machleid believes he was retaliated against because he

4    attempted to institute criminal charges against City officials for their failure to remedy

5    the drainage issues he complained of, that is not a procedural due process claim.  At best,

6    it is a claim for retaliation in violation of his First Amendment right to petition the courts,

7    and a claim that Mr. Machleid has not articulated.  Given that the City succeeded in

8    convicting him of the charges he contends were retaliatory, a retaliation claim cannot

9    stand.  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008).  Moreover,

10    he could have raised this retaliation claim as part of his defense in Municipal Court, and

11    failed to do so.

12    **E.**      **Fifth Claim – 42 U.S.C. § 1983 Takings Clause Violation**

13         In this claim, the Machleids advance several alleged violations of the Takings

14    Clause:  first, that the SOC's property use conditions constituted a taking; second, that the

15    City took their property by allowing drainage from a nearby roadway to exceed the scope

16    of the City's drainage easement; and third, that the City violated state law by "altering a

17    plat without proper notification and procedure."  ¶ 8.2.  They also argue that the City

18    somehow imposed a "direct or indirect tax" upon the Machleids in violation of RCW

19    § 82.02.020.

20         Each of these claims fails as a matter of law.  Any takings claim arising from the

21    property-use conditions of the SOC fails for the reasons stated in Part III.B., *supra*.  If the

22    City has routed drainage beyond the parameters of its drainage easement, this is not a

23    taking of property, but a trespass.  State law is sufficient to remedy trespass, and indeed

24    Mr. Machleid has brought a state law trespass claim.  Mr. Machleid's contention that the

25    SOC improperly modified plat conditions that apply to his property cannot stand for two

26    reasons.  First, as noted, the SOC's validity cannot be challenged in this court.  Second,

27    the property-use conditions that allegedly modified plat conditions are no longer in force,

28    ORDER – 11

and so Mr. Machleid's claim is moot.  Finally, the Machleids' invocation of RCW § 82.020.020 is unavailing.  That statute prevents municipalities from imposing development taxes.  It has no impact on a municipality's enforcement of its own land use code, or on its efforts to promote compliance with that code.

**F.    Sixth Claim – Negligence**

The Machleids' negligence claims concern breaches of the City's duty of care with respect to drainage that allegedly exceeded the scope of the drainage easement over the Machleid property.  So far as the court is aware, the Municipal Court neither directly nor indirectly resolved these issues.  These claims therefore require the court to examine the evidence before it with respect to these drainage issues.  The court declines to do so at this time.  The parties have flooded the court with evidence related to the drainage issue, including material from numerous expert witnesses.  Complicating the dispute is a set of disputes over whether the Machleids properly disclosed reports from expert witnesses on whom they purport to rely.

As is perhaps inevitable in a case involving at least thirteen claims, the parties have not devoted sufficient attention to the drainage issues.  If the court resolves issues and claims relating to excess drainage, it will do so only after receiving new briefing from the parties.  In that briefing, all parties will be required to do a much better job pointing to specific evidence to support their contentions.  Both parties far too often fail to cite specific evidence supporting their claims, relying instead on the court to hunt through the record.  If this case proceeds to another round of briefing, both parties will be expected to do a much better job.  The court will discuss the possibility of additional briefing at the conclusion of this order.

**G.    Seventh Claim – Negligent Infliction of Emotional Distress**

The court has already granted summary judgment against this claim once, noting that the Machleids had failed to offer any evidence of "objective symptomatology" of their emotional distress.  Dkt. # 81.  The Machleids conceded that such evidence was

ORDER – 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

missing from the record, but introduced evidence of mental health care on a motion for reconsideration. Dkt. # 86. The court granted the motion for reconsideration, even though the Machleids offered no explanation for failing to produce the evidence earlier, and even though the evidence related only to a limited period of time. Dkt. # 88.

Upon further examination of the Machleids' evidence, the court concludes that the Machleids cannot prevail on their emotional distress claim as a matter of law. First, the court notes that Washington courts have consistently limited the availability of the tort of negligent infliction of emotional distress. *See*, *e.g.*, *Bishop v. State*, 77 Wn. App. 228, 233 n.5 (Wash. Ct. App. 1995) (citing cases). Those courts recognize that emotional distress is the ordinary outcome of many disputes, and that allowing a separate cause of action for emotional distress is ordinarily unnecessary or inadvisable, especially where emotional distress damages are compensable in the cause of action that directly addresses the dispute. The court queries whether the emotional distress attendant to this property dispute is compensable in a separate tort action.

Putting that aside, however, the Machleids have failed to satisfy the "objective symptomatology" requirement for an emotional distress claim. To satisfy that requirement, the Machleids must show that a negligent action by one or more Defendants caused them emotional distress that is "susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998) (citing *Hunsley v. Giard*, 553 P.2d 1096, 1103 (Wash. 1976)). The medical evidence the Machleids have offered is insufficient. Mr. Machleid points to an interrogatory response describing a single incident in which he saw a physician on October 16, 2008. Dkt. # 86. The interrogatory states only that Mr. Machleid described his emotional distress to the physician, and the physician recommended that he seek counseling. There is no indication in the interrogatory response that Mr. Machleid was diagnosed with anything except elevated cholesterol. Without objective evidence from the physician himself, the interrogatory response does not satisfy the objective symptomatology requirement.

ORDER – 13

*Hegel*, 960 P.2d at 431 (holding that for "symptoms to satisfy the objective symptomatology requirement, they must constitute a diagnosable emotional disorder"). The only other medical evidence Mr. Machleid submitted is from a psychologist that he saw from March 2009 to August 2009.  Dkt. # 86.  The psychologist declared only that Mr. Machleid's efforts in pursuing this lawsuit and his state court appeal were causing him emotional distress.  *Id.* (Sept. 2, 2009 letter from Dr. David Forrest).  Emotional distress is the ordinary result of most litigation, and the court is confident that no Washington court would recognize an emotional distress claim arising solely from litigation-related distress.

As to Ms. Machleid, the only evidence is a May 2009 "therapy agreement" demonstrating that Ms. Machleid sought counseling for stress arising from this lawsuit and the underlying dispute with the City.  Dkt. # 86.  She was diagnosed with "Adjustment Disorder with Depression and Anxiety."  *Id.* (May 18, 2009 therapy agreement).  She presents no medical evidence, however, that her adjustment disorder was caused by any action of Defendants.

**H.      Eighth Claim – Trespass**

The only explicit trespass claim in the Machleids' complaint is one alleging that water exceeding the scope of the City's drainage easement has encroached upon their property.  As the court noted in Part III.F, *supra*, the court will not address claims related to the excess drainage without additional briefing from the parties.

The Machleids' complaint does not raise a cause of action for ordinary trespass. The complaint does, however, describe one or more instances in which City officials came to the Machleid property and entered their home.  ¶¶ 3.9, 3.10.  The Machleids concede that at the time of these alleged trespasses, City officials had the right to be on their property as part of the property inspection process (Dkt. # 72 at 5), but they deny that those officials had the right to enter their home.  The Machleids and Defendants both treat these ordinary trespass claims as a separate cause of action.

ORDER – 14

1    Nonetheless, the Machleids have failed as a matter of law to prove trespass.  To do

2  so, they must show "(1) an invasion of property affecting an interest in exclusive

3  possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb

4  the plaintiff's possessory interest, and (4) actual and substantial damages."  *Wallace v.*

5  *Lewis County*, 137 P.3d 101, 108 (Wash. Ct. App. 2006).  There is no "invasion" of

6  property where a person is either authorized by law to enter the property, or the property

7  owner consents to the entry.  As noted above, the Machleids concede the right of City

8  officials to enter their property at the time of the alleged trespass, but deny that they

9  could enter their home.  The court's review of the record suggests that it is highly likely

10  that to the extent any City official entered their home, it happened while the home was

11  under construction as part of the inspection process.  The court need not decide that issue,

12  however, because the Machleids have no proof of "actual and substantial damages" as

13  result of the trespass.  The sole evidence of damage is that a City official either stapled or

14  nailed a "stop work" order to the exterior of the residence.  The court finds this damage

15  insufficient as a matter of law to support a trespass claim.  It also appears that every

16  "trespass" of which the Machleids complain occurred more than three years before they

17  filed this lawsuit, and thus outside the three-year statute of limitations for trespass claims.

18  *Wallace*, 137 P.3d at 108.

19  **I.    Ninth Claim – Nuisance**

20    The Machleids' nuisance claim is based on the allegation that water exceeding the

21  scope of the City's drainage easement constitutes a nuisance.  As the court noted in Part

22  III.F, *supra*, the court will not address claims related to the excess drainage without

23  additional briefing from the parties.

24  **J.    Tenth Claim – 42 U.S.C. § 1983 Takings Clause Violation**

25    There is nothing in this claim that the court has not already discussed in Part III.B.

26  and Part III.E, *supra*.  The court grants summary judgment against this claim as well.

27

28  ORDER – 15

**K.     Eleventh Claim – State Law Abuse of Process**

The court grants summary judgment against this claim for the reasons stated in part III.B, *supra*.

**L.     Twelfth Claim – Declaratory Judgment**

The Machleids request declaratory relief as to three subjects.  They seek a declaratory judgment as to the rights and obligations of the parties as to drainage on the Machleid property.  ¶15.17.  They ask for declaration that the SOC is null and void. ¶ 15.18.  They seek a declaration that the city is liable for the excess drainage and that the drainage has damaged their property, along with an order requiring the City to repair any such damage and reimburse the Machleids for costs and expenses associated with the excess drainage.  ¶ 5.19.

For the most part, the Machleids' declaratory judgment claim relates to issues over excess drainage on their property.  As the court noted in Part III.F, *supra*, the court will not address claims related to the excess drainage without additional briefing from the parties.

To the extent the Machleids seek declaratory judgment that the SOC is null and void, the court must dismiss their claim.  As the court discussed in Part III.B., *supra*, it is precluded from declaring the SOC void, as the Municipal Court has already found it valid.

**M.     Thirteenth Claim – Violations of Washington Constitution**

In this claim, the Machleids contend that the violations of their federal constitutional rights are also violations of the Washington Constitution.  The Machleids do not articulate any relevant distinction between the rights that the Washington Constitution guarantees and the rights enshrined in the United States Constitution, and the court is not aware of a relevant distinction.  The court accordingly grants summary judgment against this claim for the same reasons that it granted summary judgment against the Machleids' federal constitutional claims.

ORDER – 16

1

### IV.  CONCLUSION

2          For the reasons stated above, the court GRANTS in part and DENIES in part

3 Defendants' three summary judgment motions.  (Dkt. ## 40, 50, 51).  The court DENIES

4 the Machleids' motion for summary judgment.  Dkt. # 58.  Finally, the court DENIES

5 both of the Machleids' pending discovery motions.  Dkt. ## 49, 90.  The denial of the

6 discovery motions requires additional explanation.

7          The Machleids' discovery motions raise grave concerns.  Both are untimely, as

8 both were filed after discovery had already closed.  Rather than resolve the motions at

9 this time, the court notes that the issues it resolved in this order would have been resolved

10 the same way regardless of what discovery the Machleids were unable to obtain from

11 Defendants.  As to the remaining claims, the Machleids will have the opportunity, if the

12 court retains jurisdiction over this case, to point out how any alleged discovery violation

13 has inhibited their ability to pursue those claims.

14          The only claims remaining in this action are the negligence, trespass, and nuisance

15 claims related to the excess drainage on the Machleid property.  There are no federal

16 claims remaining in this lawsuit.  The federal claims were the sole basis for this court's

17 jurisdiction, and 28 U.S.C. § 1367(c)(3) gives the court discretion to remand the

18 Machleids' remaining state law claims to King County Superior Court.  Accordingly, the

19 court orders both parties to submit statements of no more than 5 pages addressing

20 whether the court should exercise its discretion to remand this case.  They shall submit

21 their statements no later than July 2, 2010.

22          If the court retains jurisdiction over this case, it will order the parties to file

23 supplemental briefing with respect to the drainage-related claims.

24          DATED this 4th day of June, 2010.

25

26

27                                          The Honorable Richard A. Jones
                                            United States District Judge
28 ORDER – 17