HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW D. MACHLEID, et al.,

    Plaintiffs,

    v.

CITY OF ISSAQUAH, et al.,

    Defendants.

CASE NO. C08-1629RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment on Plaintiffs' remaining claims. Dkt. # 100. Plaintiffs did not request oral argument. For the reasons stated below, the court GRANTS the motion, DISMISSES this case, and directs the clerk to enter judgment for Defendants.

## II. BACKGROUND & ANALYSIS

**A.  Procedural History**

The court addressed the dispute between the parties at length in its June 4, 2010 order dismissing Plaintiffs' federal claims. To summarize, Plaintiffs Andrew and Wendy Machleid brought dozens of claims against the City of Issaquah and its public works director, Sheldon Lynne. All of those claims arose from the Machleids' attempt to develop a parcel of land they purchased in 2002 on Mount Quay Drive in Issaquah. In the course of developing that land for their home, Mr. Machleid committed criminal

ORDER – 1

violations of the Issaquah Municipal Code. He was convicted in Issaquah Municipal Court in January 2009 and sentenced in May 2009. Mr. Machleid appealed his conviction to King County Superior Court. In October 2010, that court affirmed Mr. Machleid's convictions. He has now appealed to Division One of the Washington Court of Appeals.

As this court ruled in June 2010, the preclusive effect of Mr. Machleid's conviction doomed most of his claims here. After the June 2010 ruling, the only claims remaining were the Machleids' Washington law claims for trespass, nuisance, and negligence. All of those claims arose from the contention that Defendants were liable for the discharge of drainage water onto the Machleid property.

The parties had attempted to address the drainage-related claims in the motions that led to the June 2010 ruling. The court was disappointed with their efforts. The court observed that the parties had submitted numerous reports from purported expert witnesses, that they had disputes over whether those experts' testimony was properly disclosed, and that they had largely failed to cite evidence specifically. The court ruled that it could not resolve the drainage-related claims without receiving new briefing that remedied these deficiencies. Dkt. # 96 at 12 ("In that [new] briefing, the parties will be required to do a much better job pointing to specific evidence to support their contentions. Both parties far too often fail to cite specific evidence supporting their claims, relying instead on the court to hunt through the record.").

After determining that it would continue to exercise supplemental jurisdiction over the drainage-related claims, the court ordered new briefing. Its instructions were specific. The court ordered the Machleids and Defendants separately that when "they cite evidence or other matters of record . . . they shall cite it with specificity, including citation to a specific page or pages." Dkt. # 99 at 2. The court also set deadlines for the briefing, requiring Defendants to submit a summary judgment motion no later than August 27,

ORDER – 2

2010, and requiring that the Machleids "oppose the motion for summary judgment in accordance with the local rules." *Id.*

The Machleids violated the court's orders. First, they did not oppose the summary judgment motion in accordance with the local rules. Defendants filed their summary judgment motion on August 27, 2010, properly noting it for September 24, 2010, in accordance with Local Rules W.D. Wash. CR 7(d)(3). Local Rule CR 7(d)(3) thus made the Machleids' opposition brief due no later than Monday, September 20, or (if they chose to serve their opposition by mail) Friday, September 17. The Machleids ignored these deadlines. On September 24, they still had not filed an opposition. Defendants filed a reply brief noting the Machleids' failure to file an opposition, and asking that their motion be granted. On September 27, the Machleids filed their opposition brief. They did not acknowledge that it was late. On October 5, the court renoted the summary judgment motion, permitted Defendants to file a reply by October 8, and required the Machleids to submit a statement explaining their late opposition and explaining why the court should not deem Defendants motion to be unopposed. The Machleids ignored that order. They have never explained their late filing.

Second, the Machleids' opposition brief ignores the court's requirement that they cite all evidence with specificity, including citation to a specific page or pages. The Machleids cite almost no page numbers. They cite numbered paragraphs within their own declarations and their amended complaint with specificity, but otherwise they leave it to the court to find the evidence to which they refer. They have submitted reports from more than half a dozen engineers who have examined the property for one reason or another over the past 15 years.[1] Those reports collectively total more than 200 pages.

---

[1] The Machleids seek to rely on two of these engineers as their expert witnesses. They failed to timely disclose those witnesses, and failed to make disclosures as required by Fed. R. Civ. P. 26(a)(2). The court could exclude evidence from them on this basis. Instead, in an effort to consider the merits of the Machleids' claims, the court has considered evidence from these witnesses. None of it contradicts the conclusions that are essential to the court's ruling today.

ORDER – 3

1    The Machleids do not cite a single one of those pages.  They give the court no means to
2    sift through those reports to find relevant evidence.

3    **B.       Factual Background for the Machleids' Drainage-Related Claims**

4    With that procedural history in mind, the court turns to the Machleids' drainage-
5    related Washington law claims.  All of them center on the allegation that drainage water
6    discharging on their property is eroding the hillside surrounding their home.  It is
7    undisputed that there are two public drainage easements on the Machleid property.  Both
8    were created in 1994 as part of the short plat that the City approved that included the
9    Machleid property, several adjacent properties intended for residential use, and a tract to
10   the east that was designated as a native growth protection easement ("NGPE").  Mount
11   Quay Drive, which is atop manmade embankments, separates the tract with the NGPE
12   from the Machleid property and the other lots.  The land generally slopes downward from
13   the tract on the east side of Mount Quay Drive across the Machleid property.  Thus,
14   Mount Quay Drive presents a barrier to the natural downhill flow of both groundwater
15   and surface water.  The 1994 short plat thus includes two drainage easements on the
16   Machleid property.

17   One easement, which the court will refer to as the "southern easement," extends
18   from Mount Quay Drive in a northwesterly path that crosses the northwest corner of the
19   property to the south of the Machleid property, and continues on to the Machleid
20   property, where it terminates in the southeast quadrant of the property.  It appears that a
21   drainage culvert runs from the upland property to the east underneath Mount Quay Drive,
22   across the adjoining residential property, and terminating above ground within the
23   easement on the Machleid property.  So far as the court is aware, the southern easement
24   plays no role in this litigation.

25   The other easement, which the court will refer to as the "northern easement,"
26   extends from Mount Quay Drive in a northwesterly path that completely crosses the
27   northeast quadrant of the Machleid property.  It also has a drainage culvert running
28   ORDER – 4

through it that begins on the upland property to the east of Mount Quay Drive and travels below the road.  That culvert terminates above ground within the northern easement, just south of the northern border of the Machleid property.  So far as the record reflects, the location of the terminus of the culvert has not changed since it was installed by the plat developer in 1994.  In the late 1990s, before the Machleids owned the property, a landslide event damaged the western portion of Mount Quay Drive where it abuts the eastern border of the Machleid property.  The City constructed a soldier pile rock wall to support the road along that border, and installed a new culvert running beneath Mount Quay Drive, along with modifications to the drainage system on the east side of the road.  It appears that the City connected the new culvert to the existing culvert that terminates in the northern easement.  It is also possible that the City completely replaced the culvert from Mount Quay Drive to its terminus on the northern easement.

From 1994 until present, water discharging from the culvert in the northern easement has followed a path that is on the Machleid property, but extends outside the northern easement.  That path extends from the terminus of the drainage culvert to the western border of the Machleid property, roughly parallel to the northern border of the property.  There is no dispute that the drainage apparatus (the culvert) is contained entirely within the northern easement.  There is also no dispute that water discharging from the culvert has, since the creation of the easement, traveled across the Machleid property beyond the easement.

C. **The Machleids' Drainage-Related Claims Fail As a Matter of Law.**

The Machleids would like to hold Defendants liable for the flow of water after it leaves the culvert.  The City sharply contests the assertion that water discharging from the culvert is damaging the Machleid property.  The court does not need to resolve that dispute, however.  The Machleids' claims fail for a more fundamental reason.  The City is under no legal obligation to do anything about groundwater discharged from the culvert.

ORDER – 5

1   The Machleids claim that the water that discharges from the culvert intrudes onto their property. They claim that the City has been negligent in allowing this discharge, that the discharge exceeds or overburdens the easement (and thereby trespasses on their property), and that the excessive discharge is a nuisance. These claims reflect the Machleids' belief that the City has a duty to confine any water discharged in the easement so that it does not migrate onto the Machleid property beyond the easement. The Machleids provide no legal support for their belief.

Defendants' summary judgment motion requires the court to draw all inferences from the admissible evidence[2] in the light most favorable to the Machleids. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in answering legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

The Machleids' claim that Defendants' discharge of water is negligent. A negligence claim requires them to demonstrate that the Defendants had a duty and breached it. The Machleids fail to establish that the Defendants had any legal duty to confine the water discharged within the drainage easement. They cite authority regarding a city's obligation to maintain its own water systems – sewage or drainage systems – that are designed to confine water. The drainage apparatus that is lawfully contained within

---

[2] Although they do not cite the page numbers of the evidence they submit, the Machleids frequently cite their amended complaint by paragraph number. The City correctly objects that the amended complaint cannot serve as evidence to oppose a summary judgment motion.

ORDER – 6

the easements over the Machleid property is not designed to confine water. It is designed to discharge water. From its very inception, it was designed to discharge water within the easement and then allow that water to travel over the Machleid property beyond the easement.[3]

Although it does not appear to be at issue in this litigation, the southern easement is a better illustration of the Machleids' misunderstanding of the legal obligations associated with the easement. Whereas the northern easement begins and ends at the border of the Machleid property, the southern easement terminates in the middle of the Machleid property. It was thus undisputedly understood that water discharging from that easement would travel beyond the easement and onto the remainder of the Machleid property. If the City (or anyone else) agreed to confine that water to a particular path, there is no evidence of that agreement. The same is true of water flowing from the northern easement.

There is evidence that both easements were designed with the intent that water discharged from them would travel over the Machleid property in a way that mimicked its path before the platting of the property. It appears that no one believed that this would adversely affect the property. Perhaps they were mistaken. It appears that two engineers that the Machleids hired believe that it was a bad idea to allow the drainage to discharge in an uncontrolled manner. Perhaps they are right. But unless Defendants undertook the legal obligation to control water leaving the easement, the Machleids' claims against them must fail.

There is neither evidence nor legal authority for the proposition that the City or Mr. Lynne were obliged to ensure that the water discharging from the easement followed a particular path. There is no evidence that they had a legal obligation to address any adverse effects of the flow of the water. Indeed, there is no indication that Mr. Lynne

---

[3] The City contends that it acquired a prescriptive easement over the path the drainage follows after it leaves the easement. The court need not resolve that contention.

ORDER – 7

undertook any obligation whatsoever with respect to the Machleid property.[4]  The City was obliged merely to confine any drainage apparatus within the easement.  It has fulfilled that obligation.

The same considerations are dispositive of the Machleids' claims for trespass.  For those claims to have merit, the Machleids would have to show that it was unlawful for water leaving the easement to travel over their property.  Again, they cite no authority for that proposition.  They would be hard pressed to do so, because the easement has never delineated the permissible path of discharged water, it instead limits the location of the physical apparatus of a drainage system that discharges water.  There is no allegation that the apparatus (the drainage culvert) exceeds the borders of the easement.

The Machleids' nuisance claim fares no better.  Washington law defines nuisance:

> Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

RCW § 7.48.120.  As the definition suggests, the first obligation of a party claiming nuisance is to point to an unlawful act or omitted duty.  The Machleids thus have to establish that it is unlawful to discharge water into an easement set aside for the discharge of water.  They have failed to do so.  Alternatively, they have to establish that the City has a duty to prevent water discharged within the easement from traveling beyond it.  Again, they fail to do so.

The Machleids' also contend that Defendants are liable for overburdening the drainage easement.  They contend that in the course of approving other developments on nearby property, Defendants have increased the volume of water that flows through the

---

[4] The Machleids insist that Mr. Lynne, when visiting their property in response to their complaints about drainage, undertook some obligation to them.  The court finds no evidence that Mr. Lynne made any assurances that would give rise to a duty to the Machleids.

ORDER – 8

easement. The court finds no evidentiary support for this claim. Putting that aside, however, there is no evidence that the use of the easement itself has changed at all. So far as the record reflects, the easement has always contained the same drainage culvert, or at least a culvert of identical diameter. Even if the Machleids are correct that the volume of water discharged has increased, the volume of the water has not overburdened the easement, it has (at best) overburdened the path beyond the easement over which the water travels. Defendants undertook no obligations with respect to this path.

Finally, the Machleids make various assertions that the City was aware of the erosion problems caused by the outflow from the drainage easement, and failed to warn the Machleids. There is certainly evidence that the City was aware of the problems. There is also evidence that the Machleids were aware of the problems. What is missing, however, is any authority that demonstrates that the City had an obligation to warn the Machleids about the problems.

**D.   The Machleids' Remaining Claims Should Also Be Dismissed As a Sanction for Failure to Comply with Court Orders.**

The preceding analysis represents the court's best effort to sift through the evidence the Machleids have submitted. The court has done so even though the Machleids ignored its order to cite specific pages of evidence supporting their claims. The court prefers to resolve matters on their merits, and it reaches its ruling today because it concludes the Machleids cannot prevail on their drainage-related claims as a matter of law.

The court also concludes, however, that the Machleids' remaining claims should be dismissed as a sanction for failing to comply with court orders. The court provided the Machleids with an additional opportunity to present their drainage-related claims. It gave them specific instructions not only for citing evidence related to those claims, but for the timing of that presentation. The Machleids did not comply with those instructions. When the court ordered the Machleids to explain why their opposition brief

ORDER – 9

was untimely, they declined to do so.  They did so even though Defendants asked the court to grant their summary judgment motion as unopposed.  They did so even though this court's local rules permit it to consider a failure to respond to a motion as an admission that the motion has merit.  Local Rules W.D. Wash. CR 7(b)(2).

The court strongly prefers to resolve matters on their merits, and has attempted to do so today.  Where a plaintiff flaunts court orders in a manner that frustrates the court's consideration of the merits of his or her claims, the court cannot reward that conduct.  Dismissal of the Machleids' remaining claims is an appropriate sanction, and an independent alternate basis for the court's ruling today.

### III.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion for summary judgment.  Dkt. # 100.  The court DISMISSES this case and directs the clerk to enter judgment for Defendants.

DATED this 9th day of March, 2011.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 10